UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HAEDYN-KHRIS R. BEAUMANN,

                Plaintiff,

    v.

OFFICER BAYLESS, *et al.*,

                Defendants.

Case No. C20-1782-LK-SKV

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Haedyn-Khris Beaumann is currently confined at the King County Correctional Facility ("KCCF") in Seattle, Washington. She alleges in this action that Defendants violated her Fourteenth Amendment right to due process when they denied her access to a functional knee immobilizer after she injured her knee in the KCCF dayroom. *See* Dkt. 8. Plaintiff identifies KCCF Corrections Officers Bayless and O'Campo, and KCCF Nurse Tina[1], as Defendants in her amended complaint. *Id*. at 3.

---

[1] Defendants, in their motion papers, identify "Nurse Tina" as Registered Nurse Radostina Decheva. *See* Dkt. 21 at 3; Dkt. 23.

REPORT AND RECOMMENDATION
PAGE - 1

Plaintiff seeks compensatory and punitive damages totaling $175,000, and declaratory relief. *Id*. at 6-7.

This matter is now before the Court on Defendants' motion for summary judgment. Dkt. 21. Defendants submitted in support of their motion the declarations of Defendants Casey Bayless (Bayless Decl., Dkt. 22), Radostina Decheva, R.N. (Decheva Decl., Dkt. 23), and Glen O'Campo (O'Campo Decl., Dkt. 24), and the declaration of Benjamin Sanders, M.D., the Medical Director of King County Jail Health Services ("JHS") (Sanders Decl., Dkt. 25). Plaintiff filed a brief in opposition to Defendants' motion (Dkt. 30), together with a declaration in support of the brief (Beaumann Decl., Dkt. 31). Defendants filed a reply brief in support of their motion (Dkt. 32), which completed the briefing on the pending summary judgment motion.

The Court, having now reviewed Defendants' motion, all related briefing, and the balance of the record, concludes that Defendants' motion for summary judgment should be granted and Plaintiff's amended complaint and this action should be dismissed with prejudice.

## II.    BACKGROUND

### A.    Plaintiff's Allegations

Plaintiff alleges in her amended complaint that she injured her knee on or about November 12, 2020, while in the dayroom at KCCF, and she thereafter sought medical services for her injured knee. Dkt. 8 at 4. On November 14, 2020, and again on November 21, 2020, Plaintiff's knee was examined by KCCF medical providers, both of whom determined that she had likely suffered a ligament tear and would need an MRI to further assess the injury. *Id*. at 5. Following her appointment on November 21st, the KCCF medical provider asked that Plaintiff be taken to the emergency room for x-rays. *Id*. Plaintiff was thereafter transported to the

Harborview Medical Center ("HMC") emergency room by KCCF Corrections Officers Bayless and O'Campo. *Id*.

Plaintiff asserts that emergency room doctors confirmed the likely diagnosis of ligament tears and ordered her to wear a knee immobilizer to reduce pain and prevent further damage. *Id*. Plaintiff claims that the emergency room doctors informed her, as well as Defendants Bayless and O'Campo, that without the immobilizer "she would be put at . . . a substantial risk of serious further injury and harm as well as further pain and discomfort." *Id*. Plaintiff further claims that the emergency room doctors also said that though they could not determine if the knee immobilizer contained plastic or metal supports, "either way, they were necessary to reduce the pain and . . . stop further injury and harm as if the supports were removed they would render the imobilizer [sic] useless." *Id*.

Plaintiff asserts that when she returned to KCCF with Officers Bayless and O'Campo, they stopped to check-in with Nurse Tina, pursuant to protocol. *Id*. at 6. When Nurse Tina saw the knee immobilizer she asked if there was metal in it and, once it was determined there was, she asked Officers Bayless and O'Campo to remove the metal. *Id*. Plaintiff claims that Officers Bayless and O'Campo thereafter took out a pocketknife, split open the immobilizer, and removed the metal supports. *Id*. Plaintiff protested the removal of the supports as she was concerned about the emergency room doctors' purported warning that the supports were necessary to prevent further pain and injury but, according to Plaintiff, her "protests were to no avail." *Id*. Plaintiff maintains that the functional knee immobilizer greatly reduced her pain and suffering for the short period of time she was able to wear it, while the non-functional immobilizer increased her pain substantially. *Id*.

REPORT AND RECOMMENDATION
PAGE - 3

On December 2, 2020, KCCF staff, after reviewing Plaintiff's grievances and consulting a doctor, provided Plaintiff with a functional knee immobilizer. *Id*. Plaintiff alleges that as a result of Defendants' actions, she went for 12 days without a functional knee immobilizer which caused increased pain and subjected her to a substantial risk of serious injury. *Id*. at 5.

### B. Facts Presented by Defendants

Plaintiff was booked into the King County Department of Adult and Juvenile Detention ("DAJD") on June 10, 2020, on a charge of first-degree murder. *See* Dkt. 21 at 1-2; Sanders Decl., ¶ 6. On November 13, 2020, Plaintiff sent a kite to JHS complaining of left knee pain, and she was seen the same day by Nurse May Gimilo. Sanders Decl., ¶ 8, Ex. A. Nurse Gimilo noted pain and swelling in Plaintiff's left knee and provided an extra blanket so Plaintiff could elevate the knee. *See id*.

The following day, November 14, 2020, Plaintiff was seen again for her knee pain, this time by JHS Dr. Thomas Hutch. *Id*., ¶ 9. Plaintiff reported to Dr. Hutch that two or three days earlier, she had been "dumb" and had jumped up, twisted into the air, and landed on her left leg, twisting her knee. *Id*., ¶ 9, Ex. B at 1. She further reported feeling pain immediately and experiencing swelling a short time later. *Id*. Dr. Hutch concluded that Plaintiff's clinical presentation was "most consistent with meniscal or ligamentous injury." *Id*., Ex. B at 3. However, Plaintiff declined a full examination of the possible ligamentous injury due to her acute discomfort, and Dr. Hutch concurred that deferring the exam was appropriate since ruling out a ligamentous injury was non-emergent. *Id*. Though Plaintiff was already taking multiple chronic pain medications, Dr. Hutch added 1000 mg of acetaminophen for seven days, and also ordered ice, a neoprene sleeve for swelling, and crutches for stability. *See id*., ¶ 9, Ex. B at 3.

REPORT AND RECOMMENDATION
PAGE - 4

1   Dr. Hutch indicated that Plaintiff should be seen again in 7-10 days to re-attempt an examination
2   evaluating the integrity of the connective tissue in the injured knee and to order follow-up
3   imaging if indicated. *Id*., Ex. B at 3.

4       Plaintiff was seen again in the JHS clinic on November 21, 2020, for multiple issues
5   including complaints of persistent left knee pain. *Id*., ¶ 10, Ex. C. The provider, Nurse
6   Practitioner Jane Yun, recommended Plaintiff be sent to the emergency room, deeming further
7   examination warranted given the duration of the injury without improvement. *See id*. Plaintiff
8   was escorted to HMC by Officers Bayless and O'Campo. Bayless Decl., ¶ 3; O'Campo Decl., ¶
9   3.

10      After examining Plaintiff, the HMC providers considered a differential diagnosis that
11  included an MCL sprain/rupture, a meniscal injury, and a tibial plateau fracture. Sanders Decl.,
12  Ex. D at 3. An x-ray was performed and no fracture was detected. *Id*., ¶ 11, Ex. D at 3. The
13  radiology results noted that the alignment of the knee was normal, there was no significant knee
14  joint effusion (swelling), and there was no soft tissue abnormality. *Id*. The HMS providers
15  concluded that a meniscal injury was "most likely," and they placed Plaintiff in a left knee
16  immobilizer with instructions that it be worn at all times when out of bed and not showering. *Id*.
17  Officer Bayless informed Plaintiff and the HMC provider that if the immobilizer had metal in it,
18  it might need to be removed at the jail for security reasons. Bayless Decl., ¶ 5; O'Campo Decl.,
19  ¶ 4.

20      Officers Bayless and O'Campo escorted Plaintiff back to KCCF following her HMC visit
21  where she was seen by Nurse Tina Decheva. Bayless Decl., ¶¶ 6-7; O'Campo Decl., ¶ 5;
22  Decheva Decl., ¶ 5, Ex. A. The officers informed Nurse Decheva that the knee immobilizer
23

REPORT AND RECOMMENDATION
PAGE - 5

provided at HMC contained metal. Bayless Decl., ¶¶ 8-9; Decheva Decl., ¶ 8. Nurse Decheva had previously been advised to be aware of medical devices with metal pieces that could be removed as the metal can pose a security concern for the facility. Decheva Decl., ¶ 9. Nurse Decheva determined that the metal in the knee immobilizer was not medically necessary for the immobilizer to function because the Velcro and plastic supports in the device still kept the knee straightened. *Id*., ¶ 10.

Nurse Decheva explained to Plaintiff that she could not have the metal in the facility, and then instructed Officers Bayless and O'Campo to remove the metal from the device. *Id*., ¶¶ 11-12; Bayless Decl., ¶ 10; O'Campo Decl., ¶ 5. The knee immobilizer was taken off Plaintiff and the officers used scissors to cut the top of the immobilizer and remove the metal pieces. Bayless Decl., ¶ 11; O'Campo Decl., ¶ 6; Decheva Decl., ¶ 12. The device was then returned to Plaintiff and she wrapped it around her leg before being escorted back to general population. Bayless Decl., ¶¶ 12, 14; O'Campo Decl., ¶¶ 6-7; Decheva Decl., ¶ 13. Officer Bayless advised Plaintiff that if she had an issue with the metal being removed from the device, she could raise the issue with the DAJD. Bayless Decl., ¶ 13.

Plaintiff thereafter submitted a kite asking to have the metal put back in the knee immobilizer. Sanders Decl., ¶ 13, Ex. F. On December 1, 2020, DAJD staff determined that, for security reasons, Plaintiff would have to be housed in the infirmary if the metal were to be returned to the immobilizer. *Id*., ¶ 15, Ex H. The following day, December 2, 2020, Plaintiff was moved to the infirmary where a nurse instructed Plaintiff on how to put the brace back on with the metal stays in place. *Id*., ¶ 16, Ex. I. Plaintiff remained in the infirmary for a single day before submitting a kite on December 3, 2020, stating she did not wish to remain in the infirmary

REPORT AND RECOMMENDATION
PAGE - 6

and requesting to have the brace removed so she could be returned to general population. *Id.*, ¶ 17, Ex. J. Plaintiff was returned to general population the same day, apparently in possession of the brace with the metal stays removed. *See id.*, ¶ 17, Ex. J at 3.

On January 8, 2021, an MRI was performed on Plaintiff's left knee at HMC and it was confirmed that she had a meniscal tear with no evidence of any injury to the ligaments. *Id.*, ¶ 19, Ex. K. On March 4, 2021, Plaintiff had arthroscopic surgery on her injured knee. *Id.*, ¶ 20, Ex. L.

### III. DISCUSSION

Defendants argue in their motion for summary judgment that they did not violate Plaintiff's Fourteenth Amendment rights because they were not deliberately indifferent to a serious medical need. Dkt. 21 at 6-9. Defendants further argue that they are entitled to qualified immunity because any violation of the Fourteenth Amendment was not clearly established. *Id.* at 9-10. Because this Court concludes that Plaintiff has not established any violation of a constitutional right, it need not address Defendants' qualified immunity argument.

#### A. Applicable Legal Standards

##### 1. Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to

REPORT AND RECOMMENDATION
PAGE - 7

support the nonmoving party's case." *Id*. at 325.  The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court must draw all reasonable inferences in favor of the nonmoving party. *Id*. at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585.  "[T]he requirement is that there be no *genuine* issue of material fact. . . .  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d

REPORT AND RECOMMENDATION
PAGE - 8

1216, 1221 (9th Cir. 1995).  Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

        2.     *Section 1983 Standard*

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that she suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

        3.     *Inadequate Medical Care*

The Court evaluates a pretrial detainee's Fourteenth Amendment claim alleging a violation of the right to adequate medical care under an objective deliberate indifference standard.  *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (2016)).  To establish a Fourteenth Amendment claim, a plaintiff must demonstrate that: (1) the defendant made an intentional decision with respect to conditions under which the plaintiff was confined; (2) the conditions put plaintiff at

substantial risk of suffering serious harm; (3) the defendant did not take reasonable measures to abate the risk, "even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious;" and (4) by not taking such measures, the defendant caused plaintiff injury. *Id*. at 1125.

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* (quoting *Castro*, 833 F.3d at 1071 (quoted sources omitted)). A "mere lack of due care" does not suffice to establish a constitutional violation. *Id.* Thus, a pretrial detainee "must 'prove more than negligence but less than subjective intent – something akin to reckless disregard.'" *Id*.

### B.    Analysis

The Court begins by noting that Defendants, in their motion for summary judgment, fail to identify the proper standard for evaluating Plaintiff's claim of inadequate medical care. Defendants acknowledge in their motion papers that Plaintiff has asserted a claim under the Fourteenth Amendment. *See* Dkt. 21 at 6. However, they then proceed to analyze the claim under the Eighth Amendment's subjective deliberate indifference standard which is applicable to medical care claims asserted by convicted prisoners, rather than under the Fourteenth Amendment's objective deliberate indifferent standard which the Ninth Circuit has determined is applicable to medical care claims asserted by pretrial detainees. *See id*. at 6-9; *see also Gordon*, 888 F.3d at 1124-25. Plaintiff likewise fails to distinguish the standards in her briefing. *See* Dkt. 30. The Court will nonetheless evaluate Plaintiff's medical care claim under the Fourteenth Amendment standard set forth above based on the evidence presented by the parties.

There can be no question, based on the evidence in the record, that Nurse Decheva made an intentional decision to have the metal supports removed from the knee immobilizer provided to Plaintiff at HMC, and that Officers Bayless and O'Campo executed her directive. Decheva Decl., ¶ 10; Bayless Decl., ¶¶ 10-11; O'Campo Decl., ¶¶ 5-6. The medical decision was Nurse Decheva's alone, though it clearly comported with Officer Bayless's understanding that metal is not allowed in the facility because of the risk that it could be turned into a weapon. *See* Bayless Decl., ¶¶ 8, 15. The first *Gordon* factor is therefore satisfied.

However, the record is devoid of any evidence supporting the remaining *Gordon* factors. The evidence in the record demonstrates that Nurse Decheva reviewed Plaintiff's medical records when she returned from HMC and noted that Plaintiff had been diagnosed with a likely meniscal injury. *See* Decheva Decl., ¶ 6, Ex. A at 2-3. She also noted the directive that the left knee immobilizer provided to Plaintiff should be worn at all times when not in bed. *Id.*, Ex. A at 2-3. Based on the available information, Nurse Decheva determined that the metal in the device was not necessary for the immobilizer to function. *See* Decheva Decl., ¶ 10, Ex. A. Dr. Sanders, in his declaration, explains that a knee immobilizer is actually neither helpful nor necessary for the type of injury Plaintiff was believed to have suffered, *i.e.*, a meniscal injury, because the patient does not need to be immobilized in such circumstances. Sanders Decl., ¶ 14. Dr. Sanders also indicates that, to the extent the immobilizer was provided by HMC as a precaution in the event Plaintiff had suffered a sprain of a ligament, the metal stays were nonetheless unnecessary as the heavy nylon and the Velcro straps served to keep Plaintiff's leg extended. *See id.*, ¶¶ 14, 18.

    Plaintiff contends that the removal of the metal rendered the immobilizer useless and caused her to experience increased pain, and she states in her declaration that the HMC doctors informed her, as well as Officers Bayless and O'Campo, that removing the supports would cause the immobilizer not to function as it should or as the doctors intended.  Beaumann Decl., ¶ 7.  However, the notes of the HMC visit do not contain any such warning and, in any event, Nurse Decheva was permitted to make an independent assessment regarding the necessity of the metal supports.  Moreover, Plaintiff presents no evidence, only conclusory assertions, that the immobilizer could not serve its intended purpose without the metal supports, and Dr. Sanders opined to the contrary.  *See* Sanders Decl., ¶¶ 14, 18.  As to Plaintiff's assertion that the removal of the metal supports caused her to experience increased pain, the HMC report indicates that even with the immobilizer in place, Plaintiff should use crutches if she experienced pain with weightbearing.  *Id.*, Ex. D at 3-4.  The record makes clear that Plaintiff had been provided crutches at KCCF.  *Id.*, Ex. B at 3.

    It is notable that while Plaintiff claims the immobilizer made the pain "much more bearable," she appears to base this assessment on the brief period of time during which she was being transported from the HMC back to KCCF on November 21, 2020, with the knee immobilizer in place.  Beaumann Decl., ¶¶ 9, 10.  The fact that Plaintiff experienced less pain during a short car trip than she did once she was up and moving around the facility does not speak to the efficacy of the modified immobilizer.  It is also notable that after Plaintiff grieved the removal of the metal supports from her immobilizer and was transferred to a location in the facility where she could be allowed to keep the metal, *i.e.*, the infirmary, she asked to have the immobilizer removed so she could be returned to general population.  Sanders Decl., ¶¶ 15-17,

REPORT AND RECOMMENDATION
PAGE - 12

Exs. H-J.  When Plaintiff was contacted by a medical provider to address her request to have the immobilizer removed, Plaintiff was not wearing the immobilizer, though she was using her crutches, and she advised the provider that the pain in her knee was improving.  *Id.*, Ex. J at 1.

Plaintiff has not demonstrated that the removal of the metal supports put her at substantial risk of suffering serious harm, and the record makes clear that she was provided crutches to assist with pain and stability.  When she was provided the opportunity to wear the knee immobilizer in the infirmary with the metal supports in place—an accommodation she believed was necessary to reduce pain and prevent her from suffering additional injury to the damaged knee—the evidence demonstrates that Plaintiff rejected the accommodation within a day.  Finally, the Court notes that the record is devoid of any evidence that Plaintiff suffered any actual injury as a result of Defendants' removal of the metal supports from the knee immobilizer.  In sum, Plaintiff has not identified any admissible evidence that creates a genuine factual dispute with respect to the question of deliberate indifference.  Defendants are therefore entitled to summary judgment in this matter.

## IV.    CONCLUSION

Based on the foregoing, this Court recommends that Defendants' motion for summary judgment be granted, and that Plaintiff's amended complaint and this action be dismissed with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's

motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 25, 2022**.

DATED this 1st day of February, 2022.

S. KATE VAUGHAN
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 14